UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LOUISE CATHERINE ERRICKSON,

    Plaintiff,

v.   Case No. 8:22-cv-533-VMC-CPT

LAKELAND REGIONAL MEDICAL
CENTER, INC.,

    Defendant.
_____/

**ORDER**

This matter is before the Court on consideration of Defendant Lakeland Regional Medical Center, Inc.'s Motion to Dismiss (Doc. # 26), filed on April 20, 2022. Plaintiff Louise Catherine Errickson responded on May 4, 2022. (Doc. # 27). The Motion is granted.

**I.   Background**

Errickson began working for Lakeland Regional as a pharmacy technician in May 2019. (Doc. # 25 at 2). In June 2020, she took FMLA leave to have a brain tumor removed. (Id.). She "continued receiving chemotherapy treatments through September 2020, which caused nausea, weakness, and exhaustion." (Id.). Also in "September, 2020, [Errickson] returned from FMLA and received a fitness for work form, an

1

exam she had to satisfactorily complete to return to work, per company policy, which she passed." (Id.).

Soon after returning to work, Errickson resumed chemotherapy in November 2020, "with continued nausea, weakness and exhaustion. Her Pharmacy Technician Team Leader, Christina Fillway, knew of this and agreed to [Errickson] taking intermittent breaks as needed as a reasonable accommodation for her temporary disability." (Id.). "However, because of [her] disability status and need for an accommodation she was then subjected to her supervisors and co-workers, including Laura Morgan, Shane Smith, LeWilliam Means, and Kaylen, following her and harassing her throughout her shifts at work." (Id.).

In early January 2021, Errickson applied for a transfer to a position in the medical records department, which she was told she could apply for. (Id. at 3). A week later, some medications went missing and, although there was allegedly no evidence on which to blame Errickson, the pharmacy operations coordinator, Melissa Warren, "issued a Level 1 written counseling to" Errickson. (Id.). According to Errickson, this was her first write-up ever and she "was singled out and treated differently when it came to the allegations and missing medications" because of her disability. (Id.).

2

Because of this write-up, Errickson was blocked from her requested transfer. (Id.).

Months later, in March 2021, "Fillway called [Errickson] into the office and was told that a co-worker had taken photographic evidence showing that [she] had not finished her assigned tasks, but [] Fillway would not show the photograph to [Errickson], stating that it was unimportant and that [she] needed to finish her work before leaving." (Id.). Then, "[o]n or about April 9, 2021, Pharmacy Technician, Shane Smith, reported to Laura Morgan that [Errickson] allegedly mixed up Midazolam in with the Morphine Syringes." (Id. at 4). Although other pharmacy technicians had also operated the Midazolam box that night and there was no record of which technician mixed the medications, Errickson was issued a "Level 2 write-up." (Id.). According to her, this was unsubstantiated and "discriminatory against [Errickson] as the other individuals involved, without a disability, were not issued the same write-up/warning." (Id.).

After her chemotherapy ended in April 2021, Errickson was forced to undergo a second fitness for duty examination, for which there was "no basis" because "the surgery on her brain affected the motor functions in her arms and legs and

not her cognitive functions." (Id.). She passed this examination. (Id.).

Errickson "expressed her concerns of harassment directly to Laura Morgan, Christina Fillway, Allison Trombley, and Marissa Warren, and her concerns were written off and nothing was done to correct the situation." (Id. at 5). "After [Errickson] expressed her concerns of harassment, she was again retaliated against by [Lakeland Regional] by being singled out, treated differently, and no weight or concern was placed or her reports of harassment by" Lakeland Regional. (Id.). According to her, "[o]n or about May 11, 2021, [she] resigned from her position with [Lakeland Regional] because of the harassment and retaliation she received while employed . . . as she felt that it was best for personal health. This was a constructive discharge." (Id.).

Errickson initiated this action in state court. Lakeland Regional removed the case to this Court on March 7, 2022. (Doc. # 1). Errickson filed an amended complaint on April 14, 2022. (Doc. # 25).

In her amended complaint, Errickson asserts one claim for violation of the Americans with Disabilities Act (ADA). (Doc. # 25). Because there is only a single count asserted, it is difficult to determine what theories of liability

4

Errickson is proceeding under, be it disparate treatment disability discrimination, hostile work environment, retaliation, or retaliatory hostile work environment.

Lakeland Regional now moves to dismiss the amended complaint. (Doc. # 26). Errickson has responded (Doc. # 27), and the Motion is ripe for review.

## II.  Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan

v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## III. Analysis

Lakeland Regional argues that the amended complaint should be dismissed with prejudice because Errickson has failed to state a claim under any theory of liability under the ADA.

### 1. Disparate Treatment Discrimination

"To establish a prima facie case of disparate treatment discrimination under the ADA, a plaintiff must show that, at the time of the adverse employment action, (1) she had a disability, (2) she was a qualified individual, and (3) she was subjected to unlawful discrimination because of her disability." Phillips v. Harbor Venice Mgmt., LLC, No. 8:19-cv-2379-VMC-TGW, 2020 WL 2735201, at *5 (M.D. Fla. May 26, 2020) (citing Mazzeo v. Color Resolutions Int'l, LLC, 746 F.3d 1264, 1268 (11th Cir. 2014)).

Lakeland Regional argues that this claim fails because Errickson has not plausibly alleged an adverse employment action or a causal link to her disability. (Doc. # 26 at 2).

6

Regarding causation, Lakeland Regional contends that there is no "allegation of circumstantial evidence to suggest that any adverse act was because of disability." (Doc. # 26 at 17). The Court disagrees. Errickson has sufficiently alleged, for the motion to dismiss stage, that she was wrongly disciplined at work because she was disabled. According to her, there was no evidence that she — rather than her non-disabled co-workers — violated work rules or was responsible for mistakes. (Doc. # 25 at 3-4). Yet, Lakeland Regional allegedly singled her out for write-ups and additional requirements, like another fitness for duty examination, because of her disability. Taking these allegations as true, Errickson has sufficiently alleged a causal connection between the alleged discrimination and her disability.

Regarding the adverse employment action element, Errickson relies on her negative write-ups, verbal reprimand, and alleged constructive discharge. As to the discipline over her job performance, Lakeland Regional argues that "[d]isciplinary action such as the write-ups alleged here do not amount to an adverse employment action." (Doc. # 26 at 9). "A reprimand that has a meaningful adverse effect on an employee's working conditions may be cognizable. However, a reprimand does not constitute an adverse employment action

7

when the employee suffers no tangible harm as a result." Melton v. Nat'l Dairy LLC, 705 F. Supp. 2d 1303, 1321–22 (M.D. Ala. 2010) (citations omitted).

Here, Errickson has not plausibly alleged that the write-ups or reprimand she received or the second fitness for duty examination were adverse employment actions. This is because she has not alleged that she suffered a tangible harm such as a loss of pay, a raise, or a promotion, because of these actions. See Martinez v. City of Birmingham, No. 2:18-CV-0465-JEO, 2019 WL 398686, at *6 (N.D. Ala. Jan. 31, 2019) ("The amended complaint does not allege the write-up Plaintiff received . . . resulted in any type of disciplinary action, loss of pay, denial of a raise or the like. Instead, the allegations are more akin to 'a mere scolding' without any tangible harm as a result. As such, the write up standing alone does not constitute an adverse employment action." (citations omitted)).

As for the write-up for the missing medications, Errickson argues this was an adverse employment action because it prevented Errickson from transferring to the medical records department. (Doc. # 27 at 5). "A lateral transfer that does not result in 'lesser pay, responsibilities, or prestige' is not adverse. Likewise, the

refusal to give an employee such a transfer cannot be an adverse employment action." Barnhart v. Wal-Mart Stores, Inc., 206 F. App'x 890, 893 (11th Cir. 2006) (citation omitted). The amended complaint does not allege that the medical records position had better pay, hours, or prestige than Errickson's pharmacy technician job. Thus, the write-up resulting in the loss of a transfer opportunity is not plausibly an adverse employment action as currently alleged.

Additionally, Errickson has not stated a disparate treatment claim based on her alleged constructive discharge. To prove a constructive discharge under the ADA, "a plaintiff must demonstrate that working conditions were 'so intolerable that a reasonable person in her position would have been compelled to resign.'" Griffin v. GTE Florida, Inc., 182 F.3d 1279, 1283–84 (11th Cir. 1999). "In addition, the plaintiff must show that the employer intentionally rendered the employee's working conditions so intolerable based on a protected status, such as disability, that the employee was compelled to quit involuntarily." Phillips, 2020 WL 2735201, at *5 (citing Henson v. City of Dundee, 682 F.2d 897, 907 (11th Cir. 1982). "Moreover, whether the working conditions were sufficiently intolerable to amount to a constructive discharge is judged by an objective standard,

9

not the employee's subjective feelings." Id. (citing Richio v. Miami-Dade Cnty., 163 F. Supp. 2d 1352, 1367 (S.D. Fla. 2001)). "The standard for proving constructive discharge is higher than the standard for proving a hostile work environment." Id. (citing Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001)).

Here, Errickson has not plausibly alleged that she was constructively discharged. As will be discussed below, her allegations are insufficient to state a plausible claim for hostile work environment discrimination and, thus, do not meet the even higher standard for constructive discharge.

Because Errickson has not yet amended her complaint with the benefit of an order from the Court, the ADA disparate treatment claim is dismissed with leave to amend.

### 2. Hostile Work Environment Discrimination

The Eleventh Circuit has never recognized a hostile work environment claim under the ADA in a published opinion. See Menzie v. Ann Taylor Retail Inc., 549 F. App'x 891, 896 (11th Cir. 2013) ("We have never held in a published opinion that a hostile work environment claim is available under the ADA."); see also Stewart v. Jones Util. & Contracting Co. Inc., 806 F. App'x 738, 741 (11th Cir. 2020) ("[W]e assume for purposes of this opinion that an ADA hostile-work-

10

environment claim exists as well."). "[F]or the purposes of ruling on this Motion, the Court will assume that a disability-based hostile work environment claim is actionable under the ADA. Furthermore, given their similar frameworks, this Court will evaluate [Errickson's] claim under the jurisprudence of Title VII." Phillips, 2020 WL 2735201, at *3.

To plead a hostile work environment claim, a plaintiff must allege "(1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as [disability]; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).

"Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component." Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th

11

Cir. 1999). "[T]he following four factors [] should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id. "The Court must also bear in mind that neither Title VII, nor the ADA, is a 'general civility code, and simple teasing[,] offhand comments, and isolated incidents (unless extremely serious) do not constitute a hostile work environment.'" Phillips, 2020 WL 2735201, at *4 (quoting Guthrie v. Waffle House, Inc., 460 F. App'x 803, 806 (11th Cir. 2012)).

Although the issue of whether harassment was severe and pervasive is usually better addressed at summary judgment, the Court agrees with Lakeland Regional that the amended complaint's allegations are insufficient to even state a plausible claim for hostile work environment at the motion to dismiss stage.

Here, Errickson alleges without greater detail that her supervisors and co-workers "follow[ed] her and harass[ed] her throughout her shifts at work." (Doc. # 25 at 2). She also

12

alleges that she received two disciplinary write-ups despite allegedly insufficient evidence that she was responsible for the violations or mistakes, that she was verbally reprimanded by a supervisor once for not finishing her assignments, that she was required to undergo a second fitness for duty evaluation after her chemotherapy ended in April 2021, and her complaints of harassment were not taken seriously. While no doubt unpleasant, these allegations taken together do not rise to the level of severe or pervasive harassment. See Spivey v. Enter. City Bd. of Educ., No. 1:18-CV-427-SRW, 2019 WL 357983, at *6 (M.D. Ala. Jan. 29, 2019) (dismissing ADA hostile work environment claim as not involving severe or pervasive harassment where plaintiff alleged she was removed from supervisory responsibility as a teacher and received closer scrutiny than other employees).

Despite her argument to the contrary (Doc. # 27 at 6-7), Errickson's allegations here are less severe than those in the Phillips case in which the hostile work environment claim survived a motion to dismiss. Unlike here, in Phillips, the plaintiff "endure[d] multiple angry text messages from her superiors, repeated orders to stay home for what she claims were trumped-up reasons, [and] a repeated disregard of requests for accommodations to recover from a serious

13

illness," as well as "invasive" personal questions and comments about her breast cancer surgery. Phillips, 2020 WL 2735201, at *4 n.2.

Still, because the Court is not convinced that amendment would be futile, the ADA claim is dismissed with leave to amend as to the hostile work environment theory. However, the Court advises Errickson that — if she chooses to amend — she must assert a separate count for each separate theory of liability under the ADA. That is, she should plead a claim for hostile work environment based on disability in a separate count from any other claims, such as disparate treatment disability discrimination, retaliation, or retaliatory hostile work environment.

### 3. Retaliation and Retaliatory Hostile Work Environment

"To establish a prima facie case of ADA retaliation, a plaintiff must demonstrate (1) that she engaged in a statutorily protected expression, (2) that she experienced [a materially] adverse employment action, and (3) that there was a causal link between the two." Spivey, 2019 WL 357983, at *7. "In order to evidence 'a causal connection, the plaintiff must show that the decisionmaker was aware of his protected conduct, and that the protected activity and adverse action

were not wholly unrelated.'" Id. (quoting Clemons v. Delta Air Lines Inc., 625 F. App'x 941, 945 (11th Cir. 2015)). Assuming that a retaliatory hostile work environment claim is available under the ADA, a claim for retaliatory hostile work environment exists where the employer retaliated against the employee for engaging in protected activity by creating a work environment that would deter a reasonable person from engaging in the protected activity. Babb v. Sec'y, Dep't of Veterans Affs., 992 F.3d 1193, 1207 (11th Cir. 2021).

Again, Errickson only asserts a single count for violation of the ADA in her amended complaint. Thus, it is difficult to tell whether she is attempting to assert a retaliation claim or retaliatory hostile work environment claim in addition to claims for disability discrimination and hostile work environment based on her disability.

However, if she did intend to assert such claims, the retaliation and retaliatory hostile work environment claims are not plausibly pled. As Lakeland Regional notes (Doc. # 26 at 20), it is unclear whether Errickson complained to her supervisors merely of perceived unfair treatment, or whether she complained that this unfair treatment was attributable to disability discrimination. See Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs, 47 F.3d 1068, 1074 (11th Cir. 1995) ("Coutu

15

made no allegation and offered no proof of race or national origin discrimination; she contended only that she worked hard and deserved a better rating than Oldland had given her. Unfair treatment, absent discrimination based on race, sex, or national origin, is *not* an unlawful employment practice under Title VII. Accordingly, Coutu's grievance against Oldland did not constitute statutorily protected activity.").

Additionally, all the materially adverse actions sufficiently alleged in the amended complaint appear to have occurred before Errickson "expressed her concerns of harassment" to supervisors. (Doc. # 25 at 5). Although the dates of her complaints are not alleged, the allegations of possible protected activity follow the allegations about the disciplinary write-ups Errickson received and the second fitness for duty examination, suggesting the protected activity came after these events. Thus, it is not plausible that Lakeland Regional issued such discipline or required the fitness for duty examination in retaliation for Errickson's complaints.

At most, Errickson conclusorily alleges that after she complained, "she was again retaliated against by [Lakeland Regional] by being singled out [and] treated differently." (Id.). More detail about the alleged retaliation following

her complaints is needed. And, as explained previously, Errickson has not plausibly alleged that she was constructively discharged in her amended complaint. Therefore, she cannot base retaliation claims on such alleged constructive discharge at this time.

The retaliation claim and retaliatory hostile work environment claim are dismissed with leave to amend. If Errickson chooses to amend, she should assert these claims in separate counts.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Lakeland Regional Medical Center, Inc.'s Motion to Dismiss (Doc. # 26) is **GRANTED.**

(2) If she wishes to amend, Errickson may file her second amended complaint by **May 25, 2022.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 11th day of May, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE