UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LOUISE CATHERINE ERRICKSON,

      Plaintiff,

v.                       Case No. 8:22-cv-533-VMC-CPT

LAKELAND REGIONAL MEDICAL
CENTER, INC.,

      Defendant.
_____/

**ORDER**

This matter is before the Court on consideration of Defendant Lakeland Regional Medical Center, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 30), filed on June 7, 2022. Plaintiff Louise Catherine Errickson responded on June 20, 2022. (Doc. # 31). The Motion is granted in part and denied in part, as explained below.

**I.   Background**

In May 2019, Errickson began working for Lakeland Regional as a Pharmacy Technician and allegedly has always been an employee in good standing. (Doc. # 29 at 2). In June 2020, she took FMLA leave to have a brain tumor removed. (Id.). She "continued receiving chemotherapy treatments through September 2020, which caused nausea, weakness, and exhaustion." (Id.). That same month, Errickson "returned from

1

FMLA leave and received a fitness for work form, an exam she had to satisfactorily complete to return to work, per company policy, which she passed." (Id.).

In November 2020, two months after returning to work, Errickson restarted her chemotherapy treatment "with continued nausea, weakness, and exhaustion. Her Pharmacy Technician Team Leader, Christina Fillway,[1] knew of this and agreed to [Errickson] taking intermittent breaks as needed as a reasonable accommodation for her temporary disability." (Id. at 3). "However, because of [her] disability status and need for an accommodation [Errickson] was then subjected to her supervisors and coworkers, including Laura Morgan, Shane Smith, LeWilliam Means, and Kaylen, following, recording, and harassing her throughout her shifts at work." (Id.).

In early January 2021, Errickson requested a transfer to the medical records department after being told that she could apply for either of two open positions. (Id.). Shortly after requesting transfer, "an entire segment of medications" went missing, and "Marissa Warren, Pharmacy Operations Coordinator, issued a Level 1 written counseling to

---

[1] According to Lakeland Regional, her name is actually Christina Fillyaw. See (Doc. # 30 at 5 n.1). But, to avoid any confusion, the Court will keep the spelling consistent with Errickson's second amended complaint.

[Errickson].” (Id.). Errickson alleges that this write-up "was unsubstantiated and not based on any facts or evidence related to [her] actions," and that instead, "she was singled out and treated differently" because of her disability. (Id.). Further, according to Errickson, this write-up – her first ever – caused Lakeland Regional to block her requested transfer. (Id. at 3–4).

Over two months later, on March 22, 2021, Fillway told Errickson "that a co-worker had taken photographic evidence showing that [she] had not finished her assigned tasks, but [] Fillway would not show the photograph to [Errickson], stating that it was unimportant and that [she] needed to finish her work before leaving." (Id. at 4). Then, "on or about April 9, 2021, Pharmacy Technician, Shane Smith, reported to Laura Morgan that [Errickson] allegedly mixed up Midazolam in with the Morphine Syringes." (Id.). Although the reports show that other employees besides Errickson also operated the Midazolam box that night and no record identifies Errickson as the one who mixed up the medications, she was issued a "Level 2 write-up." (Id. at 4–5). According to Errickson, this second write-up was "again unsubstantiated based on the evidence and discriminatory against [her] as the

other individuals involved, without a disability, were not issued the same write-up/warning." (Id. at 5).

After her chemotherapy ended in April 2021, Errickson was forced to undergo a second fitness for duty examination, for which there was "no basis" because "the surgery on her brain affected the motor functions in her arms and legs and not her cognitive functions." (Id.). She passed this examination. (Id.).

Errickson "expressed her concerns of harassment directly to Laura Morgan, Christina Fillway, Allison Trombley, and Marissa Warren, and her concerns were written off and nothing was done to correct the situation." (Id.). After expressing these concerns, "she was again retaliated against by [Lakeland Regional] by being singled out, treated differently, and no weight or concern was placed [on] her reports of harassment by" Lakeland Regional. (Id.). On May 11, 2021, Errickson resigned from her position with Lakeland Regional "because of the harassment and retaliation she received while employed by [Lakeland Regional]." (Id. at 6).

Errickson initiated this action in state court. Lakeland Regional removed the case to this Court on March 7, 2022. (Doc. # 1). Errickson filed an amended complaint on April 14, 2022. (Doc. # 25). Subsequently, Lakeland Regional moved to

dismiss the amended complaint. (Doc. # 26). This Court granted Lakeland Regional's motion but gave Errickson leave to amend with instructions to, among other things, "assert a separate count for each separate theory of liability under the [American with Disabilities Act (ADA)]." (Doc. # 28 at 14).

Erickson filed her second amended complaint on May 24, 2022. (Doc. # 29). In her second amended complaint, Errickson asserts three counts under the ADA: Count I for disparate treatment disability discrimination, Count II for hostile work environment, and Count III for retaliation and retaliatory hostile work environment. (Id.).[2]

Lakeland Regional now moves to dismiss the second amended complaint. (Doc. # 30). Errickson has responded (Doc. # 31), and the Motion is ripe for review.

## II.  **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the

---

[2] Errickson has violated the Court's prior order by failing to assert her claims for ADA retaliation and ADA retaliatory hostile work environment as separate counts. See (Doc. # 28 at 17) ("The retaliation claim and retaliatory hostile work environment claim are dismissed with leave to amend. If Errickson chooses to amend, she should assert these claims in separate counts."). However, in an abundance of fairness, the Court will not dismiss Count III on this basis.

plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004).

**III. <u>Analysis</u>**

Lakeland Regional argues that Errickson's second amended complaint should be dismissed with prejudice. The Court will address the counts separately.

### A. <u>Disparate Treatment Discrimination</u>

"To establish a prima facie case of disparate treatment discrimination under the ADA, a plaintiff must show that, at the time of the adverse employment action, (1) she had a disability, (2) she was a qualified individual, and (3) she was subjected to unlawful discrimination because of her disability." <u>Phillips v. Harbor Venice Mgmt., LLC</u>, No. 8:19-cv-2379-VMC-TGW, 2020 WL 2735201, at *5 (M.D. Fla. May 26, 2020) (citing <u>Mazzeo v. Color Resols. Int'l, LLC</u>, 746 F.3d 1264, 1268 (11th Cir. 2014)).

Lakeland Regional argues that Errickson's claim fails because she has not sufficiently alleged an adverse employment action. (Doc. # 30 at 9). According to Lakeland Regional, Errickson's claim does not allege any "material impact on her terms and conditions of employment" such as a change in hours, schedule, or location. (<u>Id.</u>).

Regarding adverse employment actions, the second amended complaint alleges that Errickson suffered harassment by coworkers, unsubstantiated write ups from her supervisors, verbal reprimands, and a constructive discharge. (Doc. # 29 at 7-8). Errickson alleges that these actions by Lakeland Regional caused her to suffer "mental anguish and increased stress," prevented her from getting transferred to a "more

7

prestigious/accommodating" position that would allow her "to move up within the company," and forced her to continue to work in a "more physically taxing" position. (Id. at 7). For its part, Lakeland Regional contends that Errickson "voluntarily resigned." (Doc. # 30 at 9).

### 1. **Loss of Ability to Transfer**

"An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1261 (11th Cir. 2001). Here, Errickson alleges that the tangible harm that she suffered included "unsubstantiated write-ups" and "emotional harm based on verbal harassment and falsified write-up[s] against her." (Doc. # 29 at 9). Negative write-ups or reprimands cannot, by themselves, amount to adverse employment actions. See Martinez v. City of Birmingham, No. 2:18-CV-0465-JEO, 2019 WL 398686, at *6 (N.D. Ala. Jan. 31, 2019) (finding that negative write-ups without any disciplinary action were "more akin to 'a mere scolding' without any tangible harm as a result").

But Errickson also alleges that the unsubstantiated write-ups "included points against her that would ultimately lead to termination," and prevented her from being able to transfer to a more prestigious position that "would have

allowed for more ability to move up within the company" — the medical records position. (Doc. # 29 at 7, 9). "A lateral transfer that does not result in 'lesser pay, responsibilities, or prestige' is not adverse. Likewise, the refusal to give an employee such a transfer cannot be an adverse employment action." Barnhart v. Wal-Mart Stores, Inc., 206 F. App'x 890, 893 (11th Cir. 2006) (citation omitted). Nevertheless, "the denial of a transfer may be the objective equivalent of the denial of a promotion, and thus qualify as an adverse employment action, even if the new position would not have entailed an increase in pay or other tangible benefits" so long as the position sought was "objectively better[.]" Alvarado v. Texas Rangers, 492 F.3d 605, 614 (5th Cir. 2007).

Accepting as true Errickson's allegation that the medical records position is more prestigious and less "physically taxing," she has sufficiently alleged that the write-ups resulting in the denial of her transfer constituted an adverse employment action. See Calhoun v. McHugh, 2 F. Supp. 3d 1217, 1234 (N.D. Ala. 2014) (holding that a denial of a plaintiff's reassignment constituted an adverse employment action because, although the plaintiff experienced no change in pay or benefits, the reassignment offered

9

"greater prestige, greater responsibilities, cleaner work conditions, and — most importantly — eligibility for pay increases").

Accordingly, Count I for ADA disparate treatment discrimination survives to the extent it is based on the denial of a transfer due to the write-ups.

### 2. Constructive Discharge

Additionally, Errickson claims that intolerable working conditions led to her resignation, thereby establishing a constructive discharge as an adverse employment action. (Doc. # 29 at 8). But the standard for establishing constructive discharge is high. See Phillips, 2020 WL 2735201, at *5 ("The standard for proving constructive discharge is higher than the standard for proving a hostile work environment." (citing Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001))).

To prove a constructive discharge under the ADA, "a plaintiff must demonstrate that working conditions were 'so intolerable that a reasonable person in her position would have been compelled to resign.'" Griffin v. GTE Florida, Inc., 182 F.3d 1279, 1283-84 (11th Cir. 1999). "In addition, the plaintiff must show that the employer intentionally rendered the employee's working conditions so intolerable

based on a protected status, such as disability, that the employee was compelled to quit involuntarily." Phillips, 2020 WL 2735201, at *5 (citing Henson v. City of Dundee, 682 F.2d 897, 907 (11th Cir. 1982)). "Moreover, whether the working conditions were sufficiently intolerable to amount to a constructive discharge is judged by an objective standard, not the employee's subjective feelings." Id. (citing Richio v. Miami-Dade Cnty., 163 F. Supp. 2d 1352, 1367 (S.D. Fla. 2001)).

Here, Errickson has not plausibly alleged that she was constructively discharged. Errickson asserts that her resignation was due to the "intolerable working conditions where she was treated differently than from her co-workers and written-up for unsubstantiated claims when others were not." (Doc. # 29 at 8). She allegedly felt isolated because of her "supervisor's repeated questions about her fitness of duty" and that the write-ups increased her stress because she believed that she would face further retaliation or possible termination. (Id. at 8–9). However, these sentiments merely reflect Errickson's subjective feelings. As discussed below, Errickson's allegations are insufficient to state a plausible claim for hostile work environment discrimination, and thus, do not meet the even higher standard for a constructive

discharge. Accordingly, Count I as it relates to Errickson's allegations of constructive discharge is dismissed.

### B. **Hostile Work Environment**

The Eleventh Circuit has never recognized a hostile work environment claim under the ADA in a published opinion. See Menzie v. Ann Taylor Retail Inc., 549 F. App'x 891, 896 n.9 (11th Cir. 2013) ("We have never held in a published opinion that a hostile work environment claim is available under the ADA."); see also Stewart v. Jones Util. & Contracting Co. Inc., 806 F. App'x 738, 741 (11th Cir. 2020) ("[W]e assume for purposes of this opinion that an ADA hostile-work-environment claim exists as well."). "[F]or the purposes of ruling on this Motion, the Court will assume that a disability-based hostile work environment claim is actionable under the ADA. Furthermore, given their similar frameworks, this Court will evaluate [Errickson's] claim under the jurisprudence of Title VII." Phillips, 2020 WL 2735201, at *3.

To plead a hostile work environment claim, a plaintiff must allege "(1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as [disability]; (4)

that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." <u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d 1269, 1275 (11th Cir. 2002).

"Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component." <u>Mendoza v. Borden, Inc.</u>, 195 F.3d 1238, 1246 (11th Cir. 1999). "[T]he following four factors [] should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." <u>Id.</u> "The Court must also bear in mind that neither Title VII, nor the ADA, is a 'general civility code, and simple teasing[,] offhand comments, and isolated incidents (unless extremely serious) do not constitute a hostile work environment.'" <u>Phillips</u>, 2020 WL 2735201, at *4

(quoting Guthrie v. Waffle House, Inc., 460 F. App'x 803, 806 (11th Cir. 2012)).

While the issue of whether harassment was severe and pervasive is usually better addressed at summary judgment, the Court agrees with Lakeland Regional that the second amended complaint's allegations are insufficient to state a plausible claim for hostile work environment.

Although Errickson now asserts a distinct count for hostile work environment apart from disparate treatment discrimination, she fails to offer sufficient additional detail to support this claim. (Doc. # 29 at 10). Errickson alleges that her supervisors harassed her through weekly discussions that were "aggressive and a constant attack on her work abilities." (Id.). But "[t]he frequency of the alleged harassment is only one of the relevant factors in determining whether it was sufficiently severe or pervasive." O'Brien v. Dep't of Agric., 532 F.3d 805, 809 (8th Cir. 2008) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

Errickson's allegations also lack the specificity or factual support to suggest that she faced severe or pervasive harassment. Errickson does not elaborate on the substance of any of the allegedly "aggressive" weekly discussions with her

supervisors. So, there is nothing in the second amended complaint alleging that her supervisors or co-workers used crude or derogatory language related to her disability or otherwise. (Doc. # 29 at 10). Further, she acknowledges in her response that the harassment, although humiliating as it involved questioning of "her ability to perform her job," was never physically threatening. (Doc. # 31 at 7).

Additionally, Errickson asserts that she "was watched and timed during her breaks during work where other co-workers were not," and that she was reprimanded for sitting down. (Doc. # 29 at 11). However, close supervision is insufficient to suggest that the alleged harassment was severe. See Spivey v. Enter. City Bd. of Educ., No. 1:18-CV-427-SRW, 2019 WL 357983, at *6 (M.D. Ala. Jan. 29, 2019) (dismissing ADA hostile work environment claim as not involving severe or pervasive harassment where plaintiff alleged she was removed from supervisory responsibility as a teacher and received closer scrutiny than other employees).

Errickson contends that the Court should consider her "medical condition and treatment" when assessing the reasonable person standard for her hostile work environment claim. (Doc. # 31 at 7). She argues that the harassment she suffered, "in conjunction with the [medical] treatment that

[she] underwent," would have given "a reasonable person in [her] situation . . . no other recourse than to resign[.]" (Id.). Yet, Errickson fails to cite any authority to suggest that the reasonable person standard requires the Court to evaluate the working environment from the standpoint of someone with her medical history and background. Further, the Eleventh Circuit has never embraced a "more contextual" reasonable person standard for hostile work environment claims. See Watkins v. Bowden, 105 F.3d 1344, 1356 (11th Cir. 1997) (rejecting plaintiff's argument that a "more contextual standard, which asked the jury to assess the working environment from the standpoint of a 'reasonable African American or woman,' was a correct statement of the law"). Still, even accounting for Errickson's medical condition, the Court is unconvinced that Errickson has alleged sufficient facts to establish severe or pervasive harassment.

Therefore, Count II for ADA hostile work environment discrimination is dismissed.

### C. Retaliation and Retaliatory Hostile Work Environment

Count III asserts both an ADA retaliation and ADA retaliatory hostile work environment claim. Notably, Lakeland Regional does not make any specific arguments for dismissal of the retaliatory hostile work environment claim in its

16

Motion. Rather, despite two mentions of the phrase "retaliatory hostile work environment" earlier in the Motion (Doc. # 30 at 2, 8), Lakeland Regional's arguments concerning Count III only address the retaliation claim. (Id. at 19-21). Thus, the claim for retaliatory hostile work environment in Count III survives.

As for the retaliation claim, "[t]o establish a prima facie case of ADA retaliation, a plaintiff must demonstrate (1) that she engaged in a statutorily protected expression, (2) that she experienced [a materially] adverse employment action, and (3) that there was a causal link between the two." Spivey, 2019 WL 357983, at *7.

Lakeland Regional argues that the retaliation claim should be dismissed because there is no causal link between Errickson's FMLA leave and the alleged adverse employment actions by Lakeland Regional. (Doc. # 30 at 19). In addition, Lakeland Regional alleges that, beyond taking FMLA leave, Errickson fails to plausibly allege any protected activity because "generalized workplace grievances are simply not protected activity." (Id. at 21). For her part, Errickson emphasizes that her protected expression was not her FMLA leave, but rather her "use of reasonable accommodations afforded to her by" Lakeland Regional after she returned from

FMLA leave. (Doc. # 29 at 12); see also (Doc. # 31 at 8). Thus, her alleged protected activity is her request for — and subsequent use of — reasonable accommodations.

To show that an employee engaged in protected activity, "it is sufficient that an employee have a good faith, objectively reasonable belief that [her] activity is protected by the statute." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1328 (11th Cir. 1998). Numerous circuit courts have found that a request for accommodations is a protected activity under the ADA. See, e.g., Solomon v. Vilsack, 763 F.3d 1, 15 (D.C. Cir. 2014) ("[W]e join our sister circuits in holding that the act of requesting in good faith a reasonable accommodation is a protected activity under 42 U.S.C. § 12203[.]"). Lakeland Regional does not contest this. See (Doc. # 30 at 21) ("Under the ADA, protected activity also includes requests for reasonable accommodation."). Thus, Errickson has plausibly alleged that she had a good faith, objectively reasonable belief that her request for and use of reasonable accommodations was protected expression. (Doc. # 29 at 12). Thus, she has alleged protected activity.

Regarding the causation element, "[i]n order to evidence 'a causal connection, the plaintiff must show that the decisionmaker was aware of his protected conduct, and that

18

the protected activity and adverse action were not wholly
unrelated.'" Spivey, 2019 WL 357983, at *7 (quoting Clemons
v. Delta Air Lines Inc., 625 F. App'x 941, 945 (11th Cir.
2015)). "A 'close temporal proximity' between the protected
expression and an adverse action is sufficient circumstantial
evidence of a causal connection for purposes of a prima facie
case." Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004)
(quoting Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th
Cir. 1998)). The Eleventh Circuit has found that a period of
one month "is not too protracted," whereas a period of three
to fourth months is "insufficient to show causal connection."
Id.

Errickson has plausibly alleged a causal connection for
her ADA retaliation claim. According to Errickson, in
November 2020, Fillway knew of and agreed to Errickson "taking
intermittent breaks as needed as a reasonable accommodation
for her temporary disability." (Doc. # 29 at 3). Because of
this accommodation request, Errickson alleges that she was
soon after "subjected to her supervisors and coworkers . . .
following, recording, and harassing her throughout her shifts
at work," including "spying on her during her breaks and
timing her breaks to report to supervisors." (Id. at 3, 12-
13). The close monitoring of her reasonable accommodation use

— that is, her breaks — suggests a relationship between her request for a reasonable accommodation and Lakeland's alleged animus towards her. Although the alleged monitoring of her breaks is not itself an adverse employment action, Errickson further claims that she was "singled out for write ups" in both January 2021 and April 2021 when "other coworkers were equally likely to have been at fault." (Id. at 3–5, 13). Therefore, the difference in time between Errickson's requesting reasonable accommodations and Lakeland Regional's first write-up, which prevented Errickson's desired transfer, was only two months. In short, Errickson has plausibly alleged causation.

Accordingly, Count III survives.

**D. Dismissal with Prejudice.**

"[U]nder the federal procedural rules, the district court need not provide specific justification for dismissing with prejudice, as this is the default effect of a proper Rule 12(b)(6) dismissal." Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc., 673 F. App'x 925, 929 (11th Cir. 2016). True, "a district court's discretion to dismiss a complaint without leave to amend is 'severely restricted' by Federal Rule of Civil Procedure 15(a)(2) [] which mandates that leave to amend, when requested by the plaintiff, 'be freely given

when justice so requires.'" Id. (quoting Bryant v. Dupree,
252 F.3d 1161, 1163 (11th Cir. 2001)). Nevertheless, the
Eleventh Circuit has "never required district courts to grant
counseled plaintiffs more than one opportunity to amend a
deficient complaint," especially where the plaintiff "has
failed to cure a deficient pleading after having been offered
ample opportunity to do so." Id. at 930; see also Bryant v.
Dupree, 252 F.3d at 1163 (explaining that district courts
need not "allow an amendment (1) where there has been undue
delay, bad faith, dilatory motive, or repeated failure to
cure deficiencies by amendments previously allowed; (2) where
allowing amendment would cause undue prejudice to the
opposing party; or (3) where amendment would be futile").

As a preliminary matter, Errickson has not properly
requested leave to amend as she did not file a motion to amend
setting forth the substance of any proposed amendment or
attach a copy of the proposed amendment. Although she states
at the end of her response to the Motion that she "should be
allowed [] leave to amend once more," burying such request in
a response to a motion to dismiss is improper. See Long v.
Satz, 181 F.3d 1275, 1279 (11th Cir. 1999) ("Filing
a motion is the proper method to request leave to amend a
complaint. . . . A motion for leave to amend should either

set forth the substance of the proposed amendment or attach a copy of the proposed amendment. In this case, the plaintiff did not file a motion for leave to amend. The request for leave to amend was included in the memorandum she filed in opposition to the motion to dismiss. Furthermore, she failed to attach the amendment or set forth the substance of the proposed amendment." (citations omitted)). Thus, no proper request for leave to amend under Rule 15 is before the Court.

Furthermore, Errickson has had ample opportunity to state plausible claims. Lakeland Regional and Errickson agreed to her filing an amended complaint to correct the original complaint. (Doc. ## 12, 25). Later, when the Court granted the motion to dismiss the amended complaint, the Court again gave Errickson an opportunity to amend, this time with the benefit of the Court's guidance on the applicable law. (Doc. # 28). Although Count I for ADA disparate treatment discrimination based on the write-up leading to a denied transfer and Count III state plausible claims, Errickson's other claims continue to suffer from the same defects identified in the Court's prior dismissal order, including failure to allege severe and pervasive harassment or constructive discharge. See (Id. at 9-14). The Court considers further amendment of these claims futile.

22

Therefore, Count I as it relates to the alleged constructive discharge and Count II for hostile work environment are dismissed with prejudice.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendant Lakeland Regional Medical Center, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 30) is **GRANTED** in part and **DENIED** in part.

(2)  Count I is dismissed with prejudice as it relates to the alleged constructive discharge.

(3)  Count II is dismissed with prejudice.

(4)  Defendant's answer to the remaining counts is due within fourteen days of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>5th</u> day of August, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE